Plaintiff brings this suit to recover the sum of $1,569.38, with legal interest thereon from judicial demand until paid, with costs, from the defendant, Mrs. Mae Cottongim. The amount sought to be recovered is allegedly made up of six items: (1) The sum of $494.96, being lumber and material purchased from Joe S. Mowad of Oakdale, and paid for by plaintiff at the request of defendant; (2) The sum of $69.81, being for the repair of defendant's automobile at Scott-Cain Motor Company of Oakdale, and paid by the plaintiff at the request of defendant; (3) The sum of $509, being money loaned and advanced by the plaintiff to defendant to pay carpenters and laborers in the repair of defendant's *Page 555 
home; (4) The sum of $93.61 for roofing material purchased from S.D. Marler of Oakdale, and paid by plaintiff at the request of defendant; (5) $202 paid by plaintiff, at the request of defendant, to joy Lumber Company of Oakdale for lumber and materials used in the repairing of defendant's home; (6) $200 paid by plaintiff, at the request of defendant, to a Mr. Fogleman for labor and materials used in painting and repairing Defendant's home.
In answer, defendant admits the payment by plaintiff to her creditors of items (1), (2) and (4), but avers that she paid said respective sums to plaintiff "at her home near Oberlin and he used her, respondent's, money in paying respondent's said debt (s)". She specifically denies items (3), (5) and (6). With reference to item (6), she avers that she paid this amount "herself to John Kirby, who furnished the material and did the work for her."
On these issues, the case was tried, resulting in a judgment for the defendant dismissing plaintiff's suit. Plaintiff has appealed.
[1] Since defendant has admitted that plaintiff paid for her items 1, 2 and 4, totalling the sum of $658.38, and pleads payment thereof, she bears the burden of proof.
According to the testimony of defendant, in February, 1944, she paid the plaintiff $473, in the presence of her daughter, Hazel, and her sister-in-law, Hazel Holliday, in her kitchen, in full payment of the lumber purchased and paid for by plaintiff, this payment being cash. She testified that she also paid plaintiff the sum of $69.81 for the repair of her car when plaintiff delivered her car to her. This payment was in cash, in the kitchen and in the presence of her daughter. Likewise she claims that she paid the Marler bill for roofing in the same manner. A discrepancy in her testimony is that she strenuously contends that she paid plaintiff $473 in February for all the lumber furnished her while admitting that she signed the delivery slips from Mowad in March showing a total purchase of $494.96. She also denies having received any lumber from Joy Lumber Company, when the evidence shows that this lumber was the first delivered and that was in February, the beginning of her repairs, which bill amounted to $202.
In corroboration of her testimony, she offered the testimony of her daughter, Hazel Cottongim. She, in effect, testified that her mother, in February, paid to plaintiff, in cash, consisting of "greenbacks", in tens and twenties, $473, in her mother's kitchen, in full payment of all her mother owed plaintiff for lumber. With reference to the amount for roofing and the repair of the automobile, she also states that her mother paid plaintiff. A very significant question and answer are the following: "Q. Well, do you know anything about the amount she paid for lumber, or not? A. All I know is she paid him. I was in there when she paid him, but how much, I dont'know". (Italics ours.) Yet in the beginning of her testimony, she was very positive that her mother had paid plaintiff $473 in "tens and twenties".
Plaintiff failed to call her sister-in-law, Mrs. Hazel Holliday, to corroborate her testimony regarding the payment to plaintiff. She was called and sworn, but was not questioned as to the payment by defendant to plaintiff.
Ruth Vernon, plaintiff's sister, testified that in March, 1945, defendant sold plaintiff cattle for $400, which he paid in cash.
[2] As against this testimony, we have the testimony of plaintiff that he did not receive any amount from the defendant in payment of the bills admittedly paid by him.
Our reason for doubting the payment of $473 supposedly made in February, 1944, is that, at that time, we find that the only advances made to defendant by plaintiff were the following: The Joy Lumber Company, Inc., bill for $202; the S.D. Marler bill for $93.61; and the Scott-Cain Motor Bill for $69.81, totalling $365.42. The evidence clearly shows that the Mowad bill was not incurred until during March, 1944, and must not have been paid in advance. Furthermore, the Mowad bill amounted to the sum of $494.96, which supposed payment of $473 cannot be said to be a payment of this bill. She has not borne the burden of proof of payment. Her proof is not clear; she has only made it probable, *Page 556 
which is not enough. It must be to a certainty.
[3, 4] As to items 3 and 6, the plaintiff had the burden of proof; these two items total $709. We are of the opinion that he has failed to bear that burden. Mrs. Cottongim categorically denies that he furnished her cash to the amount of $509 to pay her carpenters. She also categorically denies that plaintiff furnished her the sum of $200 to pay Mr. Fogleman for painters and paper-hangers of her home.
Article 2277 of our Civil Code provides that "all agreements relative to movable property, and all contracts for the paymentof money, where the value does not exceed five hundred dollars,which are not reduced to writing, may be proved by anycompetent evidence; such contracts or agreements, above fivehundred dollars in value, must be proved at least by onecredible witness, and other corroborative circumstances." (Italics ours.)
Under the allegations of plaintiff's petition and his testimony, he had orally contracted with defendant to furnish money in the repair of her home. He states that in June, 1944, at the time he advanced plaintiff the $200 to cover the expenses of painting and repairing her home, he asked the defendant if she knew how much she owed him. He then knew or should have known that he had advanced defendant the sum of $509 to pay her carpenters. Admitting, just for the mere sake of argument, that plaintiff was a credible witness to the contract, yet we find no corroborative circumstances in the record which would justify us in granting him judgment for these amounts.
In the reasons, for judgment, the, trial court states: "There is one other bit of corroborating evidence which has not been explained by the plaintiff and which in the opinion of this court bears considerable weight, that is, that subsequent to the time plaintiff claims that he advanced all of these items to Mrs. Cottongim and at a time when she had not, according to his testimony, repaid him anything whatsoever, the plaintiff purchased from, Mrs. Cattongim nine head of cattle, a Shetland pony and saddle, and a cane and corn patch, and notwithstanding the fact that she was indebted to him, according to his testimony, in the full sum of approximately $1,550.00, he paid her in cash approximately $700.00. The only explanation that he gives as to why he made this payment when the defendant was indebted to him was that 'he did not wish to take advantage of a widow woman' ".
The appellant complains that the trial judge should not have given great weight to what he calls corroborative evidence and that we should not do so in that the evidence had been objected to by plaintiff as it was an enlargement of the pleadings. After careful review of the record, wedo not find that plaintiff objected to such testimony. On page 39 of the transcript, without objection, we find plaintiff acknowledging that he had purchased from the defendant cattle for the amount of $400, a cane patch and cow for which he paid her the sum of $160. We do not give the importance, as corroborative circumstances, as given by the lower court to this testimony, in showing that defendant had discharged her full obligation to plaintiff.
The plaintiff having died after the rendition of the judgment and the taking of the appeal, the legal representative of his succession, by order, of this Court, was made party plaintiff.
For these reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from is avoided, annulled and reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of Mrs. Parthenia. Willis, administratrix, as the legal representative of the Succession of Harry H. Willis and against the defendant, Mrs. Mae Cottongim, in the full sum of $860.38, with legal interest thereon from judicial demand until paid, together with all costs. *Page 557